UNITED STATES of America,
Plaintiff,

v.

DEL RIO SPRINGS, INC., an Arizona
Corporation, et al., Defendants.

No. CR–74–48 Phx.  WPC.

United States District Court,
D. Arizona.

April 8, 1975.

Joseph R. Keilp, Asst. U. S. Atty., for the District of Arizona, Phoenix, Ariz., for plaintiff.

Richard T. Treon, Treon, Warnicke & Dann, Phoenix, Ariz., Alex Keller, Denver, Colo., for defendant DeWitt.

M. Jeremy Toles, Carmichael, McClue & Stephens, Phoenix, Ariz., for defendant Beebe.

John P. Otto, Johnson & Otto, Phoenix, Ariz., for defendant Woodall.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

Defendants Woodall and DeWitt have moved for a judgment of acquittal on counts six through thirteen of the indictment. The suggested ground for the motions is that the government has not, in any one of the enumerated counts, properly charged a violation of 15 U.S.C. § 1703(a).

That section provides, in pertinent part:

(a) It shall be unlawful for any developer or agent, directly or indirectly,

to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—

(1) to sell or lease any lot in any subdivision unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title and a printed property report, meeting the requirements of section 1707 of this title, is furnished to the purchaser in advance of the signing of any contract or agreement for sale or lease by the purchaser; and

(2) in selling or leasing, or offering to sell or lease, any lot in a subdivision—

(A) to employ any device, scheme or artifice to defraud, or

(B) to obtain money or property by means of a material misrepresentation with respect to any information included in the statement of record or the property report or with respect to any other information pertinent to the lot or the subdivison and upon which the purchaser relies, or

(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser.

It is defendants' contention that the word "and" between subsection (a)(1) and (a)(2) means that violations of both (1) and (2) must be established before there may be a violation of § 1703(a). The government argues that each subdivision sets out a separate violation, and has so charged in the indictment.

(A) Defendants cite the Court to the general rule of statutory construction that "[w]here two or more requirements are provided in a section and it is the legislative intent that all of the requirements must be fulfilled in order to comply with the statute, the conjunctive "and" should be used. Where a failure to comply with any requirement imposes liability the disjunctive "or" should be used." 1A A. Sutherland, Statutes & Statutory Construction § 21.14 at 90–91 (4th ed. C. Sands 1972). "There has been, however, so great laxity in the use of these terms that courts have generally said that the words are interchangeable and that one may be substituted for the other, if to do so is consistent with the legislative intent." Id. at 91. See Union Ins. Co. v. United States, 6 Wall. (73 U.S.) 759, 18 L.Ed. 879 (1867); Marine Carriers Corp. v. Fowler, 429 F. 2d 702 (2nd Cir. 1970). It is necessary, therefore, to look to the legislative history of this statute.

Although 15 U.S.C. § 1703 was incorporated into the Housing and Urban Development Act of 1968, it was first introduced as the Interstate Land Sales Full Disclosure Act of 1967 (Senate Bill 275). The provisions of that bill were taken almost verbatim from the Securities Act of 1933 and, in fact, the bill as originally introduced would have required registration with and enforcement by the Securities and Exchange Commission, not the Department of Housing and Urban Development, as the present law provides.

Section 5 of the Securities Act of 1933 makes it unlawful to sell securities interstate unless a proper registration statement is filed. See 15 U.S.C. § 77e. Section 4 of the proposed Interstate Land Sales act would have made it unlawful to sell certain land interstate unless a proper registration statement was filed. 113 Cong.Rec. 319–23 (1967). Section 17 of the Securities Act of 1933 makes it unlawful to use fraudulent means to sell securities interstate. See 15 U.S.C. § 77q. Section 17 of the Interstate Land Sales act would have made it unlawful to use fraudulent means to sell certain land interstate. 113 Cong. Rec. 319–23 (1967). Section 24 of the Securities Act of 1933 makes any violation of "any of the provisions of this subchapter" (emphasis added) punishable by a maximum $5000 and/or 5 years. See 15 U.S.C. § 77x. Section 21 of the Interstate Land Sales Act would have made a violation of "any of the

provisions" (emphasis added) of that Act punishable by a maximum $5000 and/or 5 years. 113 Cong.Rec. 319–23 (1967). Defendants concede that a violation, under the securities laws, of section 77e is separate and distinct from a violation of section 77q. Thus, even a preliminary comparison of the land sales provisions as originally written with the securities sales provisions reveals a virtually absolute identity of structure.

This identity is strengthened by the comments of the bill's Senate sponsor, Senator Williams of New Jersey. Senator Williams observed that under the proposed law "[i]t would be illegal to sell the land unless the registration statement was in effect." This is clearly a reference to section 4 of the bill. Later in the same statement, he commented further that "[a]nother protection for the purchaser would be the right to sue the developer for damages if his purchase was made on the basis of misstatements or omissions of fact. In addition, this bill would make it unlawful to sell lots in a subdivision by the use of fraudulent devices or practices, or by using misstatements of facts or misleading facts." This later statement is clearly a reference to section 17 of the bill. 113 Cong.Rec. 316 (1967).

The intention, throughout the later legislative history of the bill, to maintain the parallel between the Interstate Land Sales act and the Securities Act is evident in the published record. When the bill became incorporated into the Housing and Urban Development Act, Senator Fulbright commented that "the bill is still an adaptation of the Securities Act to these [interstate land] sales, even though it would be administered by the Department of Housing and Urban Development. . . . " 114 Cong.Rec. 15270 (1968). Further, "[c]ivil and criminal liabilities are provided comparable to those of the Securities Act." *Id.*

And Senator Sparkman, chairman of the Senate Banking and Currency Committee (which constructed the Senate bill) and its Housing and Urban affairs subcommittee, summarized what has now become section 1703(a):

Makes it unlawful for any developer or agent engaged in interstate commerce (1) to sell or lease any lot unless a statement of record is in effect . . . and a printed property report is furnished to each purchaser in accordance with section 1308; (2) to employ any device, scheme, or artifice to defraud; to obtain money or property [et cetera as listed in section 1703(a)(2)]. 114 Cong.Rec. 14957 (1968).

In summary, there is no evidence in the legislative history of section 1703(a) that it was ever intended that two possible violations be combined into one. Rather, all of the available history of the act indicates that the intent of Congress was to parallel the Securities Act of 1933, its violations, and its penalties.

■ (B) Defendants also suggest that if subsection (2) may be considered an independent violation it would, in effect, be mere surplusage, since "[t]he Mail Fraud Statute alone . . . provides more than ample statutory grounds for all of the crimes alleged under subsection (2) of § 1703(a)." This contention is not correct. The mail fraud statutes require the use of the mails. The "HUD" statute simply requires the use of "any means or instrument of interstate transportation or communication in interstate commerce." *See* United States v. Pocono International Corp., 378 F.Supp. 1265, 1268 (S.D. N.Y.1974).

It is therefore ordered that defendants' motions for a judgment of acquittal are denied.